USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **09/03/2025**

**MEMORANDUM ENDORSEMENT**
7:24-cv-05603
Mejia v. Ruquet et al

    By letter dated February 21, 2025, Defendants sought leave of Court to file a motion to dismiss pursuant to Fed. Rul Civ. Pro 12(b)(6). (ECF No. 37.) The Court issued a Memorandum Endorsement waiving the pre-motion conference and setting a briefing schedule for Defendants' anticipated motion. (ECF No. 39.) Defendants filed their motion papers in accordance with the briefing schedule. (*See* ECF Nos. 40-44.) Plaintiff's opposition was due to be served June 18, 2025. Despite the Court's scheduling order, Plaintiff filed his opposition, along with a Memorandum of Law in Opposition and an Amended Complaint, on July 10, 2025. (ECF No. 46-48.) In light of Plaintiff's pro se status, the Court deems the attached Amended Complaint (ECF No. 48), the operative complaint, and Defendants motion to dismiss is denied as moot.

    Defendants are directed to file an answer or respond to the Amended Complaint no later than September 29, 2025. Should Defendants seek to dismiss the Amended Complaint, they must notify the Court and Plaintiff by September 29, 2025, and the parties are directed to adhere to the following briefing schedule:

(1) Defendants' motion papers shall be served (not filed) November 5, 2025;
(2) Plaintiff's opposition papers shall be served (not filed) December 29, 2025; and
(3) Defendants' reply papers shall be served January 20, 2026.

    Defendants are directed to file all motion documents, including pro se Plaintiff's papers, on the reply date, January 20, 2026. Defendants are further directed to mail two physical copies and email an electronic copy to Chambers of motion documents, including pro se Plaintiff's documents, as they are served.

    Plaintiff is reminded that he must seek leave of Court prior to filing any future pleadings.

    The Clerk of Court is kindly requested to terminate the motion at ECF No. 40 and mail a copy of this endorsement to pro se Plaintiff at the address on ECF and show service on the docket.

SO ORDERED.

Dated: September 3, 2025
White Plains, New York

Nelson S. Román, U.S. District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Dionis Mejia,

    Plaintiff,

  -Against-

CO Ruquet,
CO Franco,
CO Mays,
CO Waszmer,
Sgt. Uleria
Sgt. Joseph
Sgt. L. Boyd
Sgt. John Doe
Sgt. John Doe 2
Sgt. John Doe 3
LT. B. Amspach
LT. Mario Panzarella

AMENDED COMPLAINT
Jury Trial demanded
Case No. 24 cv 5603

RECEIVED JUL 09 2025 PRO SE OFFICE

PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Dionis Mejia, Pro Se, alleges as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action under 28 U.S.C. Sections 1331 and 1343 (3) and (4). The matters in controversy arise under 42 U.S.C. Section 1983.

2. Venue properly lies in this District pursuant to 28 U.S.C. Section 1391 (b)(2), because the events giving rise to this cause of action occurred at Sing Sing Correctional Facility and Green Haven Correctional Facility which is located within the Southern District of State.

## PARTIES

3. The Plaintiff, Dionis Mejia ("Mejia") was incarcerated at Sing Sing Correctional Facility ("Sing Sing") and Green Haven Correctional Facility ("Green Haven") during the events giving rise to this civil complaint.

4. Defendants, Buquet, Franco, Mays, Waszmer, Sgt. Viero, Sgt. Joseph, Lt. Mario Panzarella, and Sgt. John Doe, were at all times relevant hereto, employed at Sing Sing.

5. Defendants, Sgt. L. Boyd, Sgt. John Doe 2, Sgt. John Doe 3, and Lt. B. Anspach, were at all times relevant hereto, employed at Green Haven.

## PREVIOUS LAWSUITS BY PLAINTIFF

6. Plaintiff has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

## Exhaustion of ADMINISTRATIVE REMEDIES

7. Plaintiff submitted multiple correspondences pertaining to the causes of action in this complaint. Plaintiff appealed the denials of his grievances through all administrative remedies, all the way up to C.O.R.C. (see attached grievances and appeals). - Affidavit #1

## STATEMENT OF CLAIMS

8. At all times herein, defendants were "persons" for purposes of 42 U.S.C. Section 1983 and acted under color of law to deprive plaintiff of his constitutional rights, as set forth more fully below.

## STATEMENT OF FACTS

9. On Nov. 6, 2023 at approx. 6:30 AM, Mejia was asleep in his assigned cell at Sing Sing.

10. The cell gates slammed open and officer Ruquet, Franco, and Mays rushed in violently ordering Mejia to "get the fuck up and turn the lights on". Mejia complied.

11. Correctional officer Waszmer and Sgt. Ulerio blocked the entrance to the cell while Mejia awaited further instructions.

12. Ruquet began punching Mejia in the face and Franco beat Mejia with a metal baton.

13. Mejia tried to escape the assault but was pushed back in the cell by officer Waszmer. And officer Mays.

14. Ruquet placed Mejia in the chokehold from behind. And Mejia uttered that he could not breathe.

15. Ruquet squeezed his chokehold until Mejia was unconscious.

16. Mejia woke up to his head and face being banged against the floor by officer Ruquet.

17. Mejia was defenceless as he layed flat on his stomach with his hands awkwardly cuffed behind his back.

18. Officer Ruquet and Franco relentlessly beat Mejia while he was handcuffed.

19. The beating eventually stopped and Mejia was lifted from the floor with his hands cuffed behind his back.

20. As Mejia was being escorted out the cell, officer Mays ordered the other officers to keep Mejia in the cell.

21. Officer Mays and officer Waszmer beat Mejia while Sgt. Uleria watched and failed to intervene.

22. Several incarcerated individuals screamed for the officers to stop there assault.

23. Following the excessive use of force, officer Mays escorted Mejia out of the cell.

24. As Mays escorted Mejia down "Oscar" gallery he twisted Mejia's wrist against the metal hand restraints causing extreme pain.

25. Mejia screamed out to Sgt. Joseph for help but Sgt. Joseph failed to intervene. Mejia insisted that officer Mays was breaking his wrist but Sgt. Joseph seemed disinterested.

26. Mays escorted Mejia downstairs and Sgt. Wierio instructed Mejia that they were going to the infirmary so that Mejia could be strip searched and drafted out of the facility.

27. Mays threatend Mejia not to ask the nurse anything about medical attention.

28. Mays continued to twist Mejia's handcuffed wrist causing excruciating pain and nerve damage.

29. During the strip search in the infirmary, Ruquet held a weapon over Mejia's head as a reminder to keep his mouth shut.

30. When the nurse attempted to assist Mejia with his vitals and to get ice for Mejia's swollen face, Sgt. Wierio insisted that Mejia would be okay and that he would be treated at his next facility.

31. When the nurse expressed that Mejia's right leg required stitches, Sgt. Ulerio interfered and insisted that Mejia was being drafted out.

32. The nurse expressed her discontent with Sgt. Ulerio's decision to prioritize the draft process over Mejia's serious medical needs.

33. The nurse took photo's and documented Mejia's injuries, including face injuries, shoulder injuries, wrist injuries, chipped teeth, and open gashes on Mejia's right leg.

34. The nurse also convinced Mejia to write a statement expressing the conspiratorial circumstances which prevented Mejia from receiving adequate medical care for his serious medical needs.

35. Mejia wrote a statement highlighting that he feared for his life.

36. After being denied adequate medical care Mejia was escorted to a holding cell where he was scheduled to be drafted out of Sing Sing.

37. When the transportation officer attempted to shackle Mejia's right leg, it became apparent that Mejia's leg was profusely bleeding through his white sock and down into his boot.

38. The transportation officer decided to delay the draft process and to escort Mejia back to the infirmary where he could be treated for his serious medical needs.

39. The nurse never received a chance to adequately attend to Mejia's serious medical needs, because Sgt. John Doe interfered.

40. Sgt. John Doe lost his temper and reprimanded the transportation officer for escorting Mejia back to the infirmary.

41. Sgt. John Doe ordered the transportation officer to get Mejia on the draft bus and out of Sing Sing.

42. The transportation officer complied.

43. Upon arrival at Green Haven, Mejia's shackles were removed and his injuries were apparent. The blood which profusely flowed down Mejia's leg, stained the metal leg restraints.

44. Sgt. John Doe 2, received Mejia at Green Haven correctional facility. This was on November 6, 2023.

45. Mejia expressed that the use of force was used against him at Sing Sing and that he was in excruciating pain to Sgt. John Doe 2.

46. Mejia expressed to Sgt. John Doe 2, that the sgt. at Sing Sing assured him that he would receive medical care when he arrived at Green Haven.

47. Sgt. John Doe 2, disregaurded Mejia's serious medical needs and failed to have Mejia medically screened. Instead Sgt. John Doe 2, escorted Mejia to a cell in the SHU.

48. While at Green Haven Mejia continued to express his pain and need of medical care.

49. On approximately November, 7, 2023 (could be a few days later) Mejia was escorted to the infirmary on a medical emergency by Sgt. John Doe 3.

60. Mejia expressed his pain to the nurse but when Mejia showed the nurse his open gashes on his right leg, Sgt. John Doe 3, appeared to panic.

61. Sgt. John Doe 3, interfered with the medical treatment and stated to Mejia "you told me your back and your wrist were hurting, not your leg"

62. Mejia told Sgt. John Doe 3, that the use of force was applied against him at Sing Sing and that he was in extreme pain.

63. Sgt. John Doe 3, refused to allow the nurse to treat Mejia's injuries.

54. Sgt. John Doe 3, insisted that Mejia had to be escorted back to his cell.

55. Mejia expressed to Sgt. John Doe 3, that the nurse at Sing Sing said he needed stitches. Sgt. John Doe 3, stated that "that is a sing sing problem"

56. Sgt. John Doe 3, stated that Mejia had to wait until he got to his assigned prison to be medically treated. Because Green Haven was a transit prison.

57. The nurse filled out a medical slip and assured Mejia that he would be scheduled to return to the infirmary the next day. Yet Mejia was never called back.

58. This occurred on approx. November 7, 2023 although it could have been a few days later. Sgt. John Doe 3, documented this medical emergency in a activity logbook. As Mejia could not be escorted without it being logged because he was in the SHU.

59. On approximately Nov. 8, 2023, Mejia was served with a misbehavior report authored by Sgt. Vierio, charging Mejia with assault on staff.

60. The disciplinary proceeding commenced with a DOCCS hearing Commissioner. However the proceeding was adjourned and recommenced with LT. Panzarella on Nov. 22, 2023.

61. Mejia objected to the untimliness of the hearing.

62. LT. Panzarella disregarded Mejia's objections and credited the inconsistent and contradictive testimony of Ruquet and Franco.

63. LT. Panzarella found Mejia guilty and imposed a penalty of 50 days confinement and 3 months of good time.

64. Mejia appealed the hearing determination and it was reversed on December, 29, 2023.

65. On Nov. 24, 2023, while at Green Haven, Sgt. Boyd attempted to place Mejia on the draft to upstate Correctional facility. Which was a 12 hour ride in shackles and chains.

66. Mejia showed Sgt. Boyd his wounds and expressed to him that he was in excruciating pain after being denied medical care for weeks.

67. Mejia expressed to Sgt. Boyd that he needed to be provided with medical attention mentally and physically.

68. Sgt. Boyd was deliberately indifferent to Mejia's serious medical needs.

69. Sgt. Boyd wrote Mejia a misbehavior report for refusing to get on the draft bus without receiving medical care.

70. L.T. Amspach conducted the disciplinary proceeding for Sgt. Boyd's misbehavior report, on December, 6, 2023.

71. Mejia expressed on the record to LT. Amspach that he could not get on the draft bus because he was in serious pain. Mejia also directed LT. Amspach to evidence proving that the use of force was used against him and that he never received adequate medical care for his serious medical needs.

72. LT. Amspach was informed of all the medical concerns Mejia suffered from. LT. Amspach failed to remedy Mejia's ordeal. Instead LT. Amspach found Mejia guilty and supported the unconstitutional customs employed by Sgt. Boyd, and his other subordinates at Green Haven.

## FIRST CAUSE OF ACTION: EXCESSIVE USE OF FORCE

73. Defendants, Ruquet, Franco, Mays, and Waszmer applied force maliciously and sadistically to cause Mejia harm in violation of the Eighth Amendment.

74. Mejia suffered many injuries as a result, including excruciating headaches, head injuries, face injuries, body injuries such as extreme lower back pains, chipped teeth, open wounds, wrist injuries and Mejia still lives with many physical and mental pains today, such as nerve damage in his wrist and lower back pains, as well as a bad knee and a bad shin.

## SECOND CAUSE OF ACTION:
## FAILURE TO INTERVENE

75. Defendants, Sgt. Ulerio and Sgt. Joseph's failure to intervene to prevent the misuse of force violated the Eighth Amendment.

## THIRD CAUSE OF ACTION:
## DELIBERATELY INDIFFERENT TO SERIOUS MEDICAL NEEDS

76. Defendants, Sgt. Ulerio, Sgt. Boyd, Sgt. John Doe, Sgt. John Doe 2, Sgt. John Doe 3, correctional officer Ruquet and Mays were deliberately indifferent to Mejia's serious medical needs.

## FOURTH CAUSE OF ACTION:
## CONSPIRACY

77. Defendants, Sgt. Ulerio, Ruquet, and Mays conspired to interfere with Mejia's serious medical needs, which resulted in Mejia suffering physical and mental pain to this day. Sgt. John Doe 1, was also apart of this conspiracy by forcing Mejia on the draft bus. Defendants, from Green Haven; Lt. B.Omspach, Sgt. L. Boyd, John Doe 2, and John Doe 3, also conspired to interfere with Mejia's serious medical needs.

### FIFTH CAUSE OF ACTION:
### DUE PROCESS

78. LT. Panzarella violated Mejia's Due process in violation of the Fourteenth Amendment by taking away three months of good time.

79. LT. Panzarella was not fair and impartial which result in Mejia being deprived of a liberty interest.

### SIXTH CAUSE OF ACTION:
### SUPERVISOR LIABILITY

80. LT. Amspach was aware of the violation of Mejia's rights, but failed to take steps to remedy the violation. Instead he penalized Mejia.

### RELIEF REQUESTED

Wherefore, Plaintiff request that the court grant the following relief:

A. Award compensatory damages in the following amounts:

1. $500,000 jointly and severally against defendants Ruquet, Franco, Mays and Waszmer for the physical and emotional injuries as a result of their excessive force.

2. $500,000 jointly and severally against defendants Sgt. Ulerio and Sgt. Joseph for failure to intervene.

3. $500,000 jointly and severally against defendants Sgt. Ulerio, Sgt. Boyd, Sgt. John Doe, Sgt. John Doe 2, Sgt. John Doe 3, Ruquet and Mays, for their deliberate indifference to plaintiff's serious medical needs.

4. $500,000 jointly and severally against defendants Sgt. Ulerio, Ruquet, and Mays for conspiring to deprive Mejia of a serious medical need. As well as, Sgt. John Doe, Sgt. John Doe 2, Sgt. John Doe 3, Sgt. Boyd and Lt. Amspach.

5. $500,000 jointly and severally against defendant LT. Panzarrella for violation of due process.

6. $500,000 jointly and severally against LT. Amspach for failure to act to remedy a constitutional violation.

B. Award punitive damages in the amounts:

1. $500,000 against each of the defendants named in this Complaint.

C. Grant such other relief this court deem fair.

DATE: 8-24-25

Dionis Mejia

Dionis Mejia

16-A-2079

Elmira Corr. Fac.

1879 Davis St.

Elmira, NY, 14902