UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIONIS MEJIA,

Plaintiff,

-against-

RUQUET, *et al.*,

Defendants.

No. 24-cv-5603 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Dionis Mejia ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendants Correctional Officer Ruquet; Correctional Officer Franco; Sergeant Boyd; Correctional Officer Mays; Sergeant Ulerio; Lieutenant Amspach; Sergeant Joseph; and several John Doe Defendants (collectively, "Defendants"), alleging violations of the Eighth and Fourteenth Amendments arising from an alleged use of excessive force, Defendants' alleged failure to intervene, the denial of adequate medical care, and subsequent prison disciplinary proceedings.

Plaintiff alleges that several correction officers physically assaulted him while he was restrained, that other correction officials failed to intervene to stop the assault, and that Defendants thereafter acted with deliberate indifference to his serious medical needs by delaying and interfering with necessary medical treatment. Plaintiff further alleges that Defendants violated his Fourteenth Amendment procedural due process rights during subsequent disciplinary proceedings. Pending before the Court is Defendants' Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 54.)

For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are derived from the FAC, (ECF No. 48), and Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss. (ECF No. 52). At this stage, Plaintiff's allegations are taken as true and construed in the light most favorable to Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I. November 6, 2023 Incident

On November 6, 2023, at approximately 6:30 a.m., Plaintiff alleges that he was asleep in his assigned cell at Sing Sing Correctional Facility ("Sing Sing") when C.O. Ruquet, C.O. Franco, and C.O. Mays entered the cell and violently ordered him to "get the fuck up and turn the lights on." (FAC ¶¶ 9–10.) According to the FAC, C.O. Waszmer and Sgt. Ulerio blocked the entrance to the cell while Plaintiff awaited further instructions. (*Id*. ¶ 11.) Plaintiff further asserts that C.O. Ruquet began punching him in the face, while C.O. Franco beat him with a metal baton. (*Id*. ¶ 12.) When Plaintiff attempted to escape the assault, he claims that C.O. Waszmer and C.O. Mays pushed him back into the cell. (*Id*. ¶ 13.) Plaintiff also asserts that C.O. Ruquet placed him in a chokehold until he lost consciousness, despite warning Ruquet that he "could not breathe." (*Id*. ¶¶ 14–15.)

After gaining consciousness, Plaintiff alleges that he was handcuffed and placed face down while C.O. Ruquet and C.O. Franco continued to beat him repeatedly. (*Id*. ¶¶ 17–18.) Despite being present and hearing nearby incarcerated individuals screaming for the officers to stop, Sgt. Ulerio allegedly watched and failed to intervene as the officers physically assaulted Plaintiff, including C.O. Waszmer. (*Id*. ¶¶ 21–22.) While being escorted down the gallery, Plaintiff allegedly screamed to Sgt. Joseph for help and stated that C.O. Mays was breaking his wrist, but Sgt. Joseph likewise failed to intervene. (*Id*. ¶¶ 24–25.)

### II. Post-Incident Medical Treatment and Transfer

Following the alleged altercation in the cell, C.O. Mays escorted Plaintiff to the infirmary and allegedly continuously twisted his handcuffed wrists against the metal restraints, causing severe pain and nerve damage. (*Id*. ¶¶ 24–28.) Plaintiff alleges that, during a strip search at the infirmary, C.O. Ruquet held a weapon over Plaintiff's head to intimidate him. (*Id*. ¶ 29.) A nurse attempted to take Plaintiff's vitals, provide ice for his swollen face, and noted that open gashes on his right leg required stitches. (*Id*. ¶¶ 30–31.) According to the FAC, Sgt. Ulerio interfered with that medical treatment by insisting to the nurse that Plaintiff would be okay and that he would be treated at his next facility. (*Id*. ¶ 30.)

Despite the nurse's assessment that Plaintiff's right leg required stitches and her protests to Sgt. Ulerio, Plaintiff was placed on a draft bus out of the facility. (*Id*. ¶¶ 31, 36.) A transportation officer subsequently noticed that Plaintiff was bleeding profusely through his sock and attempted to return him to the infirmary for treatment. (*Id*. ¶¶ 37–38.) Plaintiff further alleges that Sgt. John Doe reprimanded the transportation officer and ordered that Plaintiff be placed immediately on the draft bus out of Sing Sing. (*Id*. ¶¶ 39–41.)

## III. Arrival at Green Haven and Medical Treatment

Plaintiff was subsequently transported to Green Haven Correctional Facility ("Green Haven"), where he alleges that, upon arriving on November 6, 2023, he informed Sgt. John Doe 2 that he was in excruciating pain and had been promised medical care upon arrival. (*Id*. ¶¶ 44–46.) Sgt. John Doe 2 allegedly disregarded Plaintiff's medical needs, failed to have Plaintiff medically screened, and escorted him directly to a Special Housing Unit ("SHU") cell. (*Id*. ¶ 47.) The following day, Defendant Sgt. John Doe 3 allegedly escorted Plaintiff to the infirmary for a medical emergency. (*Id*. ¶ 49.) Upon seeing the open gashes on Plaintiff's leg, Sgt. John Doe 3 allegedly panicked, refused to allow the nurse to provide stitches, and stated that the injury was a "Sing Sing

problem." (*Id*. ¶¶ 50–55.) Sgt. John Doe 3 also documented the medical emergency in an activity logbook. (*Id*. ¶ 58.)

**IV. Disciplinary Proceedings**

On or about November 8, 2023, Plaintiff received a misbehavior report for assault on staff, authored by Sgt. Ulerio. (*Id*. ¶ 59.) Lt. Panzarella conducted a disciplinary hearing on November 22, 2023, where he found Plaintiff guilty and imposed a penalty of 50 days of confinement and the loss of three months of good time. (*Id*. ¶¶ 60–63.) Plaintiff objected that the hearing was untimely, and the hearing determination was ultimately reversed on December 29, 2023. (*Id*. ¶¶ 61, 64.)

Two days later, on November 24, 2023, Sgt. Boyd ordered Plaintiff to board a draft bus to Upstate Correctional Facility ("Upstate Facility"). (*Id*. ¶ 65.) Plaintiff refused, showed Sgt. Boyd his open wounds, and told him that he was in excruciating pain, prompting Sgt. Boyd to issue a misbehavior report charging Plaintiff with refusing the draft. (*Id*. ¶¶ 66–69.) On December 6, 2023, Lt. Amspach conducted a disciplinary hearing on that charge. (*Id*. ¶ 70.) Despite Plaintiff presenting evidence that he was suffering from serious medical needs and had been denied adequate care, Lt. Amspach found Plaintiff guilty. (*Id*. ¶ 71.)

**V. Exhaustion of Administrative Remedies**

Plaintiff maintains that he exhausted all available administrative remedies regarding these constitutional claims. (Pl. Opp. at 4–6.) While confined in the SHU, Plaintiff asserts that he handed his grievances directly to correctional officers for filing within 21 days of the alleged altercation at Sing Sing. (*Id*., Affidavit #1 at 16.)

After receiving no responses and being transferred across four different facilities, Plaintiff made multiple attempts to pursue his administrative remedies. (*See generally id*.) He first inquired with Upstate Facility regarding his claims against Sing Sing and Green Haven and received a response that Upstate Facility did not have access to grievances filed at other facilities. (*Id*., Ex.

A.) Plaintiff then submitted a letter to the Superintendent at Sing Sing on January 19, 2024, (*Id*., Ex. C), and received a response on February 6, 2024, stating that Sing Sing could not find any grievances on file. (*Id*., Ex. B.) Plaintiff likewise submitted a letter to Green Haven on January 22, 2024. (*Id*., Ex. D.) On January 20, 2024, Plaintiff submitted a new grievance to Elmira Correctional Facility ("Elmira") concerning the conditions at Green Haven and the lack of response to his grievances. (*Id*., Ex. E.) Elmira responded on March 8, 2024, stating that it could not find any grievances on file. (*Id*.) Plaintiff subsequently appealed directly to the Superintendent at Elmira. (*Id*., Ex. F.)

On March 21, 2024, Plaintiff filed an official grievance with the Inmate Grievance Resolution Committee ("IGRC"). (*Id*., Ex. G.) On May 7, 2024, he received a response from the IGRC permitting him to continue with the grievance process. (*Id*., Ex. H.) The grievance was ultimately denied, however, because the incident fell outside the designated timeframe and because there were no official grievances on file at either Sing Sing or Green Haven. (*Id*., Ex. I.) Despite confirmation that the Central Office Review Committee ("CORC") received his appeal on June 3, 2024, (*Id*., Ex. J), Plaintiff contends that he has not received a disposition.

**PROCEDURAL HISTORY**

Plaintiff commenced this action on July 22, 2024. (ECF No. 1.) On February 21, 2025, Defendants filed a letter motion seeking leave to file a motion to dismiss the Complaint. (ECF No. 37.) The Court granted Defendants' letter motion, waived the pre-motion conference, and set a briefing schedule for the anticipated motion. (ECF No. 39.) Defendants subsequently filed their motion to dismiss papers. (ECF Nos. 40–44.) In response, on July 10, 2025, Plaintiff filed the FAC. (ECF No. 48.)

In light of Plaintiff's *pro se* status, the Court deemed the FAC to be the operative complaint and denied the pending motion to dismiss as moot. (ECF No. 49.) The Court also set a new briefing

schedule in the event Defendants moved to dismiss the FAC. (*Id.*) Defendants subsequently served their opening papers to dismiss the FAC on November 5, 2025. (ECF Nos. 53–54.) Plaintiff served his opposition papers on December 29, 2025. (ECF No. 52.) Defendants served their reply papers, and filed all of the motion papers, on January 20, 2026. (ECF Nos. 53–56.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, "where, as here, [P]laintiff proceeds *pro se*, the court must construe [his][complaint] liberally and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Corbett v. Annucci*, 2018 WL 919832, at *5 (S.D.N.Y Feb. 12, 2018); *Askew v. Lindsey*, 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## II. 42 U.S.C. § 1983

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## III. Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "No action shall be brought with respect to prison conditions under Section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." *Smith v. Cordero*, 2024 WL

2802860, at *2 (S.D.N.Y. May 28, 2024) (citing 42 U.S.C. § 1997e(a)). When an incarcerated individual is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), the relevant administrative remedy is the Inmate Grievance Program ("IGP"). *See Garcia v. Heath*, 74 F.4th 44, 46 (2d Cir. 2023) (citing 7 N.Y.C.R.R. § 701.5). The IGP employs a three-step process that incarcerated individuals must follow when submitting grievances: (1) filing an initial complaint to be reviewed by the IGRC; (2) appealing any adverse IGRC determination to the facility superintendent; and (3) appealing any adverse superintendent determination to the Central Office Review Committee. *Id*. (citing 7 N.Y.C.R.R. §§ 701.1(c), 701.5).

When an incarcerated individual "does not properly exhaust [their] administrative remedies before filing suit, the action must be dismissed." *Terry v. Hulse*, 2018 WL 4682784, at *7 (S.D.N.Y. Sept. 28, 2018) (quoting *Mateo v. Alexander*, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010)). Indeed, the PLRA's exhaustion requirement is "mandatory" and thus "foreclose[es] judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016). However, because failure to exhaust is an affirmative defense, "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (cleaned up).

**DISCUSSION**

Defendants move to dismiss the FAC on several grounds. First, as a threshold matter, Defendants argue that Plaintiff failed to exhaust his available administrative remedies before commencing this action. (Defs.' Mem. at 6–11.) Second, Defendants argue that Plaintiff's due process claim under the Fourteenth Amendment should be dismissed because he has not alleged that his confinement created an "atypical and significant hardship" sufficient to establish a

protected liberty interest. (*Id*. at 11.) Defendants further argue that the Fourteenth Amendment claims against Lt. Amspach and Sgt. Boyd should be dismissed because Plaintiff has not alleged their personal involvement in the purported constitutional violations, which is a prerequisite to liability under 42 U.S.C. § 1983. (*Id*. at 11–12.) Third, Defendants argue that Plaintiff has not pleaded sufficient facts to state a claim for excessive force under the Eighth Amendment. (*Id*. at 12–14.) Finally, Defendants contend that Plaintiff's Eighth Amendment failure-to-intervene claims against the two John Doe lieutenants and Sgt. Ulerio should be dismissed because Plaintiff has not alleged that any of those Defendants were sufficiently close to the alleged assault to intervene. (*Id*. at 14–15.) The Court addresses each argument in turn.

## I. Administrative Exhaustion

At the outset, the Court must determine whether Plaintiff exhausted all available administrative remedies prior to filing this lawsuit as required by the PLRA. 42 U.S.C. § 1997e(a). Defendants argue that Plaintiff failed to exhaust the administrative remedies available to him while in DOCCS custody and that his claims are therefore barred by the PLRA. (Defs.' Mem. at 6–11.)

Administrative remedies must be exhausted prior to filing the initial complaint, and exhaustion during the pendency of a federal suit is insufficient. *See Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001). However, an inmate is excused from the PLRA exhaustion requirement when administrative remedies are rendered "unavailable." *Ross*, 578 U.S. at 643–44. Specifically, when a correction officer fails to file an inmate's grievance, the administrative process may be considered "unavailable" because the applicable DOCCS regulations do not provide a mechanism to appeal a grievance that was never assigned a number or filed in the first place. *Williams v. Priatno*, 829 F.3d 118, 124 (2d Cir. 2016).

Here, Plaintiff alleges that he submitted a grievance to an unidentified correctional officer, who failed to process the grievance through the proper channels. (Pl. Opp. at 4.) After learning that

his initial grievance had never been filed, Plaintiff nevertheless drafted and submitted an appeal because he believed doing so was the only remaining administrative remedy available to him. (*Id.* at 4, Affidavit #1 at 17–20.) The Court, at least at this juncture, must accept as true Plaintiff's allegation that the correctional officer never filed his grievance while Plaintiff was confined in the SHU. *See id*. Accepting those allegations as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that the grievance process was unavailable to him within the meaning of the PLRA. *See Williams*, 829 F.3d at 124–25; *see also Terry*, 2018 WL 4682784, at *9 (holding that where a correction officer fails to file a grievance, the process is practically unavailable because DOCCS regulations lack a mechanism to appeal an unfiled grievance); *Jackson v. Downstate Corr. Facility*, 2018 WL 3650136, at *8 (S.D.N.Y. July 31, 2018) (same).

Finally, the record reflects that Plaintiff pursued his administrative appeal through CORC and provided documentary evidence that CORC received his appeal. (Pl. Opp., Affidavit #1 at 20, Ex. J); *see also* 7 N.Y.C.R.R. §§ 701.1(c), 701.5. Although *Williams* makes clear that an inmate is not required to appeal the nonresponse to an unfiled grievance to CORC, Plaintiff nonetheless attempted to pursue the administrative remedies he believed remained available. *See Jackson*, 2018 WL 3650136, at *8 (noting that an appeal to CORC is not required when a grievance is submitted by the inmate but never filed with the IGRC); *Jenkins v. Cordero*, 2018 WL 456311, at *3 (S.D.N.Y. Jan. 17, 2018) (same).

For these reasons, Defendants' Motion to Dismiss Plaintiff's claims for failure to exhaust administrative remedies is DENIED.

## II. Section 1983 Claims

### A. Eighth Amendment Claims

The Court next considers Plaintiff's Eighth Amendment claims. First, Defendants move to dismiss Plaintiff's claim for excessive force, arguing that Plaintiff has not pleaded sufficient facts to state a claim. (*Id*. at 12–14.) Second, Defendants contend that Plaintiff's Eighth Amendment failure-to-intervene claims against the two John Doe lieutenants and Sgt. Ulerio should be dismissed because Plaintiff has not alleged that they were sufficiently close to the alleged assault to intervene. (*Id*. at 14–15.)

Defendants' motion papers fail to challenge the merits of Plaintiff's deliberate indifference, conspiracy, and supervisor liability claims under the Eighth Amendment, nevertheless, the Court will briefly evaluate the sufficiency of each pleading in turn. (*See generally* Defs.' Mem; Defs.' Reply.)

**i. Excessive Use of Force**

Plaintiff alleges that C.O. Ruquet, C.O. Franco, C.O. Mays, and C.O. Waszmer violated the Eighth Amendment by using force maliciously and sadistically to cause harm while he was handcuffed and defenseless. (FAC ¶¶ 10–18.)

A prisoner asserting an Eighth Amendment claim for excessive use of force must satisfy a two-prong test, "one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). To satisfy the objective prong, a plaintiff must allege that the act was "sufficiently serious" or that the harm inflicted was objectively harmful enough to reach constitutional dimensions. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). The Supreme Court has clarified that this inquiry shifts the focus away from the extent of the injury to the nature of the force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The Eighth Amendment's protections apply even when the injuries are not significant, provided the force used was "repugnant to the conscience of mankind." *Id*. at 38.

The subjective prong requires a showing that the defendants had the necessary level of culpability, which is characterized by wantonness. *Wright*, 554 F.3d at 268. A wanton state of mind consists of "acting maliciously or sadistically, for the very purpose of causing harm, rather than acting with good faith in an effort to restore order." *Blyden v. Mancusi*, 186 F.3d 252, 259 (2d Cir. 1999). To determine whether the defendants acted maliciously, courts consider the following factors: (1) the extent of the plaintiff's injuries, (2) the threat reasonably perceived by defendants, (3) the need for the application of force, (4) the correlation between that need and the amount of force used, and (5) any efforts made by defendants to temper the severity of the forceful response. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

Beginning with the objective prong, Plaintiff alleges that C.O. Franco beat him with a metal baton and C.O. Ruquet placed him in a chokehold until he lost consciousness. (FAC ¶¶ 12–15.) Those allegations are sufficient to satisfy the objective prong because, if proven, the alleged force could be found "repugnant to the conscience of mankind." *See, e.g.*, *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 509 (S.D.N.Y. 2008) ("[T]he Court is not convinced that striking [plaintiff] in the face several times . . . absent any indication that [he] posed a threat, was within with Defendant's asserted good-faith effort to maintain or restore discipline".); *Abbas v. Tate*, 2022 WL 355401, at *4 (S.D.N.Y. Feb. 4, 2022) (finding objectively unreasonable force was used against a plaintiff when an officer slammed the plaintiff's head against the wall repeatedly despite plaintiff being restrained); *Kirton v. Doe*, 2023 WL 2586279, at *5 (S.D.N.Y. Mar. 21, 2023) (holding that facts permitting an inference of misconduct are sufficient at the motion to dismiss stage). The Court therefore concludes that Plaintiff has plausibly alleged facts satisfying the objective prong.

Turing to the subjective prong, both the extent of Plaintiff's injuries, including chipped teeth, wounds requiring sutures, and nerve pain, and Defendants' failure to temper the severity of

their force, support an inference that C.O. Franco, C.O. Ruquet, C.O. Mays, and C.O. Waszmer had the necessary level of culpability. *See Romano*, 998 F.2d at 105.; *see also Ben-Reuben v. Westchester Cnty.*, 2019 WL 1406868, at *3 (S.D.N.Y. Mar. 28, 2019) ("Therefore, even in the absence of significant injury, if a complaint may be construed to allege the malicious use of force, an excessive force claim should not be dismissed for failure to state a claim.") (citation omitted). Moreover, Plaintiff alleges that he was asleep when Defendants entered his cell and complied with all directives, including Defendants' order to "get the fuck up and turn the lights on." (FAC ¶¶ 9–12). Here, applying the second *Romano* and *Whitley* factors, the Court finds that Plaintiff could not reasonably have been perceived as a security threat. *See e.g.*, *Celestin v. Angeletta*, 2021 WL 1062344, at *4 (S.D.N.Y. Mar. 19, 2021) (finding excessive force where correction officers punched, kicked, and elbowed a detainee while he was immobilized on the ground).

After being woken up, Plaintiff was forced to lie flat on his stomach, handcuffed, and beaten repeatedly by Defendants. (FAC ¶¶ 17–18). Given that Plaintiff was handcuffed and completely immobilized, Plaintiff has plausibly alleged that any subsequent application of force was wholly unnecessary. *See e.g.*, *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) ("The complaint alleged that each of the beatings described was administered maliciously and sadistically, and without need or provocation . . . [w]e conclude that the allegations were sufficient to describe unnecessary and wanton infliction of pain.")

Finally, accepting Plaintiff's allegations as true, there was no apparent relationship between the need for force and the amount of force used because Plaintiff was compliant and restrained when Defendants launched an unprovoked physical assault. (FAC ¶¶ 9–12, 17–18); *see Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 509 (noting that force allegedly used by officials was not related to their duty to maintain order.) Taken together, these factors support an inference of

wantonness. *See Blyden*, 186 F.3d at 259. The Court finds that Plaintiff has pleaded enough facts to satisfy the subjective prong.

Defendants' Motion to Dismiss Plaintiff's claim for excessive use of force is therefore denied.

**ii. Failure to Intervene**

Plaintiff next alleges an Eighth Amendment violation against Defendants Sgt. Ulerio and Sgt. Joseph for failing to intervene to prevent the alleged excessive use of force described above. (FAC ¶ 20.) Defendants argue that Plaintiff's failure-to-intervene claim must be dismissed because the FAC lacks specificity as to who was present during the beating and fails to place the supervisory defendants in close enough proximity to the alleged assault. (Defs.' Mem. at 14–15.)

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "Just as prison officials may be liable for their deliberate indifference to protecting inmates from violence at the hands of fellow inmates . . . they may also be liable for their deliberate indifference to violence by subordinates." *Blyden*, 186 F.3d at 265. The Second Circuit has recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer may be held liable for failing to intervene where the officer observes or has reason to know that excessive force is being used and has a realistic opportunity to prevent the harm from occurring. *See id*. Whether an officer had a realistic opportunity to intervene generally depends on the duration of the incident, the officer's proximity to the alleged use of force, and whether the officer was capable of preventing the harm. *See id*.

Here, Plaintiff alleges that C.O. Wazsmer, Sgt. Ulerio and Sgt. Joseph were present during the incident and failed to intervene while other officers allegedly beat him. (FAC ¶¶ 11, 25–26.) The Court is not persuaded by Defendants' argument that the FAC must be dismissed because Plaintiff did not specify the exact distance between the supervisory defendants and the alleged assault. (Defs.' Mem. at 14–15.) Moreover, Plaintiff specifically alleges that C.O. Waszmer and Sgt. Ulerio blocked the entrance to his cell. (FAC ¶ 11.) Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the FAC plausibly alleges that C.O. Waszmer, Sgt. Ulerio and Sgt. Joseph were present during the alleged assault and had a realistic opportunity to intervene but failed to do so. *See Anderson*, 17 F.3d at 557; *see also Tavares v. City of New York*, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (acknowledging that by being present, the supervising officer had a "realistic opportunity" to attempt to prevent the harm inflicted on the inmate by other officers).

Defendants' Motion to Dismiss Plaintiff's failure-to-intervene claim is likewise denied.

**iii. Deliberate Indifference to Serious Medical Needs**

Plaintiff next alleges that Defendants Sgt. Ulerio, Sgt. Boyd, Sgt. John Doe 1, Sgt. John Doe 2, Sgt. John Doe 3, C.O. Ruquet, and C.O. Mays ignored his injuries and actively interfered with his medical treatment. (FAC ¶ 76; Pl. Opp. at 7.) As a threshold matter, although Defendants move to dismiss the FAC in its entirety, their motion papers fail to raise any substantive arguments challenging the merits of Plaintiff's deliberate indifference claim. (*See generally* Defs.' Mem; Defs.' Reply.) Nevertheless, the Court briefly evaluates the sufficiency of the pleadings.

A prisoner asserting an Eighth Amendment claim for deliberate indifference to serious medical needs must satisfy both an objective and subjective prong. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer*, 511 U.S. at 834. To satisfy the objective prong, the alleged medical need must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). Factors relevant to this inquiry include whether a reasonable doctor or patient would find the condition important and worthy of comment or treatment, whether the condition significantly affects an individual's daily activities, and the existence of chronic and substantial pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The subjective prong requires a plaintiff to show that the defendant officials acted with a state of mind equivalent to criminal recklessness, specifically, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that they actually drew the inference. *Farmer*, 511 U.S. at 837. Prison guards are deliberately indifferent when they intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed. *Estelle*, 429 U.S. at 104–05.

Beginning with the objective prong, Plaintiff alleges that, as a result of the beating, he sustained chipped teeth, substantial facial swelling, severe pain in his wrists, and a deep laceration on his right leg that was bleeding profusely and required stitches. (FAC ¶¶ 30–33.) These allegations are sufficient to satisfy the objective prong because they describe injuries requiring prompt medical attention and are capable of significantly affecting an individual's daily activities. *See e.g.*, *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (noting that inmate's need for prescription eyeglasses constituted a serious medical condition…and he was impaired in daily activities).

Turning to the subjective prong, Plaintiff alleges that, despite his visible bleeding wounds, Defendants threatened him with a gun to remain silent about his condition. (FAC ¶¶ 27–29.) He further alleges that Sgt. Boyd and the remaining John Doe supervisors ignored his complaints and forced him onto a draft bus without allowing him to receive treatment from the facility nurse to clean and suture his leg wound. (FAC ¶¶ 31–42.) Accepting these allegations as true, and drawing

all reasonable inferences in Plaintiff's favor, the FAC plausibly alleges that Defendants knowingly delayed Plaintiff's access to medical care and interfered with his ability to receive treatment. *See Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014); *see e.g.*, *Samuels v. Fischer*, 168 F. Supp. 3d 625, 649 (S.D.N.Y. 2016) (facts alleging "Defendants took custody of Plaintiff—beaten and bloodied—from a medical professional . . . and left him to languish in excruciating pain for hours" were sufficient to state a claim for deliberate indifference).

The Court therefore concludes that Plaintiff has plausibly alleged both the objective and subjective components of an Eighth Amendment deliberate indifference claim. Defendants' Motion to Dismiss that claim is denied.

**iv. Conspiracy**

Plaintiff also alleges that Sgt. Ulerio, Ruquet, Mays, Sgt. John Doe 1, Sgt. John Doe 2, Sgt. John Doe 3, Sgt. Boyd, and Lt. Amspach conspired to deprive him of adequate medical care. (Pl. Opp. at 8–9.) To survive a motion to dismiss a § 1983 conspiracy claim, a plaintiff must allege specific facts showing a "meeting of the minds" between two or more state actors to act in concert to inflict an unconstitutional injury. Conclusory, vague, or general allegations of a conspiracy are insufficient as a matter of law. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (dismissing a § 1983 conspiracy claim where the complaint lacked specific factual allegations demonstrating an agreement between defendants).

Here, Plaintiff has failed to allege specific facts showing a "meeting of the minds." *See e.g.*, *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000) (dismissing conspiracy claim as "too general and conclusory to sufficiently plead the meeting of the minds requirement.") Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for conspiracy against Defendants Sgt. Ulerio, Ruquet, Mays, Sgt. John Doe 1, Sgt. John Doe 2, Sgt. John Doe 3, Sgt. Boyd, and Lt. Amspach is granted without prejudice.

### v. Supervisor Liability

Plaintiff further alleges that Lt. Amspach is liable under supervisor liability because he had actual or constructive notice of unconstitutional actions taken by his subordinates but failed to remedy the wrong, choosing instead to penalize the Plaintiff. (Pl. Opp. at 10.) However, a plaintiff must plead that each government official defendant violated the Constitution through their own individual actions and merely alleging that a supervisor received notice of a violation and failed to act is insufficient to establish personal involvement. *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020).

Here, Plaintiff has failed to plead that Lt. Amspach violated the Constitution through his own individual actions given that Lt. Amspach merely presided over Plaintiff's disciplinary hearing. *See e.g.*, *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("receiving post hoc notice of violation of an inmate's rights does not constitute personal involvement in unconstitutional activity"). Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for supervisor liability against Lt. Amspach is granted without prejudice.

### B. Fourteenth Amendment Claims

Plaintiff also alleges a Fourteenth Amendment violation against Lt. Panzarella, claiming he was deprived of a liberty interest through the loss of 90 days of good-time credits and an allegedly untimely and constitutionally deficient disciplinary hearing. (FAC ¶ 63.) Defendants argue that Plaintiff has not demonstrated that the confinement created "an "atypical and significant hardship" and that "the state has granted incarcerated individuals a protected liberty interest in remaining free from that confinement or restraint." (Defs'. Mem. at 11.)

To state a procedural due process claim under the Fourteenth Amendment, an incarcerated plaintiff must satisfy two elements: (1) that the plaintiff possessed a protected liberty interest, and (2) that defendants deprived the plaintiff of that interest without constitutionally adequate process.

*Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In the prison context, a protected liberty interest arises only where a disciplinary punishment imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Supreme Court has also established that an inmate maintains a protected liberty interest in statutory good-time credits, and the deprivation of such credits triggers minimum due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, the Second Circuit has clarified that the loss of good-time credits does not culminate in a constitutional deprivation if the disciplinary determination is subsequently reversed on administrative appeal, provided the good-time credits are restored before they affect the inmate's actual release date. *See Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (holding that an administrative reversal constituted part of the due process protection the inmate received, and it "cured any procedural defect that may have occurred").

Here, during a DOCCS hearing conducted by Lt. Panzarella, Plaintiff received a penalty of 50 days of confinement in the SHU and the loss of 90 days of good-time credits. (FAC ¶¶ 60–63.) However, Plaintiff appealed the hearing determination, and it was reversed on December 29, 2023. (*Id*. ¶ 64.) Given that the disciplinary determination was subsequently reversed on administrative appeal, Plaintiff has not experienced a deprivation of a protected liberty interest with respect to his good-time credits. *See, e.g.*, *Cespedes v. Coughlin*, 956 F. Supp. 454, 472–73 (S.D.N.Y. 1997) (finding no constitutional deprivation where an administrative reversal cured the procedural defect and restored the inmate's good-time credits).

Nor has Plaintiff plausibly alleged that his 50-day SHU confinement, standing alone, imposed an atypical and significant hardship in relation to ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484; *see also Palmer v. Richards*, 364 F.3d 60, 65–66 (2d Cir. 2004) ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in

cases where the period of time spent in SHU was exceedingly short . . . and there was no indication that the plaintiff endured unusual SHU conditions.") The FAC contains no allegations regarding the conditions of Plaintiff's confinement that would distinguish his confinement from the ordinary conditions of SHU or otherwise give rise to a protected liberty interest.

Because Plaintiff has not plausibly alleged the deprivation of a protected liberty interest, his procedural due process claim fails as a matter of law and the Motion to Dismiss is granted without prejudice.

**III. Leave to Amend**

Finally, the Court must determine whether Plaintiff should be granted leave to amend his pleadings. The Second Circuit has instructed that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (citation omitted); *see also Owens v. N.Y.C. Dep't of Sanitation*, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").

Here, Plaintiff has not been afforded the opportunity to amend his pleading after a motion to dismiss ruling. Construing Plaintiff's allegations liberally, and mindful of Plaintiff's *pro se* status, the Court will permit Plaintiff one final opportunity to replead his claims consistent with this Opinion and Order. Plaintiff is advised that any amended pleading will completely replace,

rather than supplement, the FAC. Any claims, facts, or attachments that Plaintiff wishes the Court to consider must be included in or attached to the amended pleading. Plaintiff is further advised to include additional factual allegations regarding the alleged constitutional violations and to clearly identify all claims he seeks to pursue against Defendants.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the First Amended Complaint is GRANTED in part and DENIED in part.

Plaintiff's Conspiracy, Supervisory Liability, and Fourteenth Amendment procedural due process claims are dismissed without prejudice. Defendants' motion regarding the remaining claims under the Eighth Amendment for excessive force, failure to intervene, and deliberate indifference to serious medical needs is denied.

Because Plaintiff proceeds *pro se*, Plaintiff is granted leave to file a Second Amended Complaint. If Plaintiff elects to file a Second Amended Complaint, he shall do so by September 14, 2026. Defendants shall answer or otherwise respond to the Second Amended Complaint by October 12, 2026. If Plaintiff fails to file a Second Amended Complaint within the time permitted, and cannot demonstrate good cause for such failure, the claims dismissed without prejudice by this Opinion and Order will be deemed dismissed with prejudice without further order of the Court.

The Clerk of Court is respectfully directed to (1) terminate the motion at ECF No. 54; and (2) mail a copy of this Opinion and Order to *pro se* Plaintiff at the address listed on ECF, and to note service on the docket.

SO ORDERED.

Dated: August 6, 2026
White Plains, NY



Nelson S. Román, U.S.D.J.